UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LAURA CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  1:18cv203 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.     The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.

2.     The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 21, 2008, through her date last insured of December 31, 2013 (20 CFR 404.1571 *et seq.*).

3.     Through the date last insured, the claimant had the following severe impairments: fibromyalgia, a back condition, a neck condition and obesity (Exhibits 1F to 36F)(20 CFR 404.1520(c)).

4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d). 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

6.     Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on October 1, 1965, and was 48 years old, which is defined as a younger individual age 18-44, on the date last insured.  The claimant subsequently changed age category to younger individual age 45-49 (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and CFR Part 404, Subpart P, Appendix 2).

10.    Through the date last insured, considering the claimant's age education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from April 21, 2008, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(g)).

(Tr. 17- 29 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on November 5, 2018. On January 9, 2019, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on January 24, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Between mid 2007 and December 2016, Plaintiff sought primary care treatment at

Marion Family Practice, primarily with Dr. James Orrell. (Tr. 415-54, 703-06, 1038-51.) Over the course of eight years, Dr. Orrell saw Plaintiff for fibromyalgia, chronic pain syndrome, migraines, nausea, chronic medication use, irritable bowel syndrome, hypersomnia, and anxiety, among other conditions. (*Id*.) Additionally, during this time, Dr. Orrell documented Plaintiff's obesity. (*Id*.) Dr Orrell would often prescribed medication management and refer Plaintiff for additional testing or treatment. (Tr. 415-54, 703-06, 1038-51.) In 2011, Dr. Orrell "confirmed that [Plaintiff] is permanently disabled and can not engage in any substantial gainful activity because of physical condition…[which] began on 4-21-2008." (Tr. 427.) In December 2016, Dr. Orrell opined that Plaintiff "should qualify for full disability. She is incapable because of her chronic pain, fibromyalgia and spine abnormalities to work in any capacity." (Tr. 1039.)

Plaintiff sought pain management treatment with Eric Schreier, D.O., at the Neuro Spine & Pain Center. (Tr. 308-84.) Between May 2007 and July 1, 2008, Plaintiff saw Dr. Schreier on 12 occasions. (Tr. 323, 330, 334, 341, 345, 353, 362, 366, 371, 373, 380.) After prescription medication was unsuccessful, Plaintiff underwent cervical injections in September 2007. (Tr. 359-60.) Unfortunately, there was no improvement in her conditions. (Tr. 353, 362.) Dr. Schreier continued prescription management treatment (*see e.g.*, Tr. 321, 330, 334, 341, 345, 353), and recommended additional testing (Tr. 318, 321-22). Plaintiff was discharged after she was unable to appear for a pill count the same day as Dr. Schreier requested. (Tr. 314-15.)

In 2008, Plaintiff underwent mental health treatment at Howard Regional Health System for her depression and anxiety. (Tr. 1052-56.) She had four counseling sessions and was prescribed medication management. (*Id*.)

On June 23, 2008, Plaintiff sought treatment with K. Chandrasekhar, M.D., a board

certified rheumatologist. (Tr. 385-89.) On exam, Plaintiff's neck movements were very limited; she had severe muscle spasms present in the cervical spine and tenderness in her neck and shoulder. (Tr. 388.) Multiple fibromyalgia tender points were noted. (*Id.*) Dr. Chandrasekhar diagnosed Plaintiff with fibromyalgia, chronic pain syndrome, and chronic neck pain. (*Id.*) Dr. Chandrasekhar recommended medication management and hoped that, under less stress, Plaintiff's symptoms might improve. (Tr. 389.) Plaintiff returned in September and October 2008. (Tr. 385-86.) On those occasions, Dr. Chandrasekhar noted that Plaintiff was mildly/ severely depressed. (*Id.*) Examination demonstrated a decreased range of motion in the neck and "severe" tenderness. (*Id.*) She had multiple positive fibromyalgia tender points. (*Id.*) She also had "extreme" tenderness with a limited range of motion in her lumbar spine and a positive straight leg raising test. (*Id.*) On these two sessions, Dr. Chandrasekhar affirmed his previous diagnoses. (Tr. 385-86.) Dr. Chandrasekhar opined that despite medication, Plaintiff was not getting enough pain relief. (Tr. 385.)

On June 23, 2009, at the request of the State Agency, Plaintiff presented herself for a consultative psychological examination with Ceola Berry, Ph.D., HSPP. (Tr. 390-92.) Examination was largely unremarkable. (*Id.*) However, Dr. Berry opined that Plaintiff's judgment "presented as constrained due to morbid obesity with diagnosis of degenerative disc disease and s/p herniated disc surgeries." (Tr. 392.) Dr. Berry noted that Plaintiff's ability to work would primarily be affected by her perceived physical limitations. (*Id.*) Dr. Berry diagnosed multiple medical conditions on Axis III, and diagnosed self-reported chronic pain and rule/out opiate dependency on Axis IV. (*Id.*)

At the request of the Stage Agency, on July 15, 2009, Plaintiff presented herself for a

consultative physical examination with Michael Johansen, D.O. (Tr. 394-95.) On exam, Dr. Johansen noted that Plaintiff appeared in mild distress due to pain. (Tr. 395.) There were numerous noted areas of tenderness. (*Id*.) Plaintiff walked slowly, with an antalgic and deliberate gait with the use of cane. (*Id*.) Dr. Johansen's diagnosed (1) fibromyalgia, (2) cervical disc disease, status post C4/5 fusion, (3) irritable bowel syndrome, (4) history of chronic headaches, (5) allergic rhinitis, and (6) depression and anxiety with panic attacks. (*Id*.)

On September 22, 2009, Plaintiff underwent a CT scan of the cervical spine, which noted (1) status post anterior cervical discectomy with instrumented fusion at C4/5, (2) inferior adjacent segment disc degeneration with a shallow right paracentral disc protrusion at C5/6, and (3) mild spondylosis at C2/3 and C3/4 including uncovertebral osteophyte formation at C3/4 with mild to moderate foraminal stenosis and facet joint degeneration. (Tr. 688-89). A CT scan of the lumbar spine also taken that day demonstrated (1) mild/moderate degenerative disc disease at L5/S1 associated with a shallow broad-based right paracentral disc protrusion, and (2) facet joint osteoarthritis on the left L4/5 and L5/S1. (Tr. 687.)

An MRI of the lumbar spine taken on October 6, 2010 showed (1) L5/S1 sterile spondylitic endplate changes and broad slightly inferiorly migrated disc protrusion, effacing and abutting the nerve roots, and (2) L4/5 disc desiccation and facet arthropathy with left greater than right lateral recess stenosis. (Tr. 686.)

Between the spring of 2012 and the winter of 2014, Plaintiff sought psychiatric treatment with M.S. Kamal, M.D., for her depressive disorder. (Tr. 458-68, 982.) During this time, Plaintiff complained of anxiety and stress, not wanting to leave the house, and not having interests, among other symptoms. (*Id*.) Over the course of 11 sessions, Dr. Kamal provided Plaintiff with

counseling and medication management. (*Id*.) Dr. Kamal's diagnoses included: depressive disorder and pain disorder with both psychological and medical component on Axis I. (Tr. 466.) Additionally, Dr. Kamal diagnosed chronic pain disorder. (Tr. 459.) On Axis III, he diagnosed multiple medical problems, and on Axis IV, he diagnosed "severe." (Tr. 466.)

Also, during this time, Plaintiff sought treatment at the Center for Pain Relief for medication management. Between April 2012 and November 2014, Plaintiff was seen on 34 occasions, primarily for: (1) pain, lumbar, (2) sacroiliitis, (3) cervical spondylosis, (4) chronic pain syndrome, (5) encounter for long-term use of other medications, (6) myalgia and myositis, (7) lumbosacral spondylosis, (8) pain neck/cervicalgia, (9) chronic pain syndrome, and, (10) chronic daily headache, among others. (Tr. 490-670.) Plaintiff would regularly have abnormalities on exam up through December 2013 (her date last insured). (*See e.g.*, Tr. 530, 540, 560, 571, 586, 596, 600, 611, 616-17, 620, 624-25, 629, 633-34, 637, 644, 649, 653-54, 659, 664, 669.) She was often prescribed medication management. (Tr. 490-670.) In addition to medication management, Plaintiff underwent several injections (e.g., sacroiliac joint, trigger, and lumbar) throughout 2012 and 2013. (*See e.g.*, Tr. 532, 534, 536, 639, 761, 795, 826-30, 856-57.)

An MRI of the lumbar spine taken on June 18, 2013 demonstrated (1) a small disc bulge with a small superimposed central disc protrusion at the L5/S1, causing minimal central canal narrowing and mild bilateral neuroforaminal stenosis, (2) a small disc bulge at the L4/L5, causing minimal central canal narrowing and mild bilateral neuroforaminal stenosis, and (3) prominent degenerative endplate changes with small marginal osteophytes at the L5/S1 level. (Tr. 684.)

In February 2015, a psychological consultant for the State Agency, opined that there was insufficient evidence prior to the date last insured to assess the severity of Plaintiff's affective

disorder. (Tr. 86.) Although a medical consultant for the State Agency opined that Plaintiff's fibromyalgia was not a severe impairment (*Id*.), the medical consultant concluded that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours in an 8-hour workday, sit for six hours in an 8-hour workday, and required additional postural limitations. (Tr. 87-89.) These assessments were affirmed by other State Agency consultants. (Tr. 95-98.)

Between March 2015 and January 2017, Plaintiff presented to Advanced Pain Management of Indiana. (Tr. 949-78, 1027.) She was seen on 26 sessions and multiple examinations were performed. (*Id*.) Of particular note, Plaintiff was noted to be unable to sit still during the visit due to pain; she had a flat affect, tenderness/pain with palpation, and positive straight leg raise tests. (Tr. 951-58, 960-61, 963-65, 967-69, 971, 973-74, 976-77, 979.) She was treated with medication management and injections. (Tr. 949-79.)

Because Plaintiff was not a surgical candidate (Tr. 1029-31), a spinal cord stimulator was recommended. (Tr. 1031-34.) A trial stimulator was placed on November 16, 2015. (Tr. 959.) The following week, Plaintiff reported that it was helping quite a bit. (Tr. 959.)

In March, May, and August 2016, Plaintiff sought treatment at Medical Consultants, Rheumatology, for her fibromyalgia and pain. (Tr. 995-1007.) She had 14/18 positive tender points. (Tr. 1005, 1009.) She had a weak grip strength, bilaterally. (Tr. 999, 1005.) She was diagnosed with neck pain, fibromyalgia, chronic pain disorder, and osteoarthritis cervical spine; conservative treatment was recommended. (Tr. 995-1010.)

An MRI of the lumbar spine taken on June 16, 2016 demonstrated mild to moderate multilevel degenerative disc and facet disease of lumbar spine predominantly involving the L4/L5 and L5/S1 levels and stable degenerative endplate changes at the L5/S1 level. (Tr. 987.)

On September 6, 2016, Plaintiff underwent a permanent spinal cord stimulator implantation. (Tr. 1057-58.) Unfortunately, this stimulator was not effective (Tr. 1062) and she needed revision surgery (Tr. 1038, 1059-62).

In February 2015, Plaintiff completed a Function Report, reporting her difficultly with personal care and sleeping. (Tr. 248.) Plaintiff reported that her daughter will usually cook. (Tr. 249.) Plaintiff will try to do a load of laundry if she is feeling okay. (*Id*.) Plaintiff reported that usually "I hurt VERY bad and I am exhausted from chronic fatigue and I have chronic headaches." (Tr. 250.) Plaintiff reported that her anxiety will make her not want to leave the house. (*Id.*) Plaintiff reported that her limited income causes her anxiety. (Tr. 251.) Plaintiff reported problems with instructions and finishing what she starts. (Tr. 252.) Plaintiff reported that she does not handle stress well. (Tr. 253.)

That same month, Plaintiff's daughter, Amanda Harris, completed a Function Report – Adult – Third Party. (Tr. 256-64.) Ms. Harris reported that Plaintiff has difficultly with personal care and has trouble sleeping. (Tr. 258.) Ms. Harris prepares Plaintiff's meals. (Tr. 259.) Ms. Harris reported that she will usually handle the laundry and housework as Plaintiff has "constant pain and tiredness." (*Id.*) Ms. Harris reported that Plaintiff will "very rarely" go outside because of her anxiety attacks. (Tr. 260.) Ms. Harris reported that Plaintiff's limited income causes her anxiety. (Tr. 261.) Ms. Harris reported that she will usually attend Plaintiff's medical appointments with her because of Plaintiff's conditions. (*Id.*) Ms. Harris reported that Plaintiff has difficultly with instructions and does not finish what she starts. (Tr. 262.) Ms. Harris reported that Plaintiff does not handle stress well. (Tr. 263.)

On June 11, 2016, Plaintiff's cousin, Renee King, submitted a statement reporting that,

based on her observations, Plaintiff would be off task or unable to be at the job site. (Tr. 291.)

Plaintiff testified that she had previously worked at the VA (Tr. 43-44) but was "forced to leave due to absences because of medical issues" (Tr. 45; Tr. 70). She was making mistakes and having a hard time concentrating. (Tr. 45.) She testified that she cannot work full time as she does not know how she will feel day-to-day. (Tr. 52, 69.) She testified that she would simply miss too much, like at her last job, and that even on days she could get there, she would still have trouble performing tasks. (Tr. 70-71.) Some days her pain is worse, some days it is better. (Tr. 61.) She has neck (*id*.) and low back pain (Tr. 62-63). She also has headaches with nausea and sometimes they cause her to be in bed all day. (Tr. 53, 64.) In addition, she has fibromyalgia pain which causes her all over pain. (Tr. 65.)

Plaintiff testified that she has painful swelling in her feet which makes it hard to walk. (Tr. 49.) She takes pain medication, which she described as a "roller coaster." (Tr. 51.) She testified that she could probably sit for 30 minutes and walk for ten minutes. (Tr. 51.) It is easier to walk than it is to just stand, but even still she cannot walk very fast or long. (*Id.*) She has trouble sleeping at night because of the pain and anxiety. (Tr. 66.) Her stress and anxiety will make her irritable bowel worse and make her nauseous. (Tr. 67.) Some days her symptoms are triggered by simply having to leave the house. (*Id.*) She takes antidepressants but cannot take some other mental health prescriptions because of her other medications. (Tr. 68.)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 21, 2008, her alleged onset date, through her date last insured, December 31, 2013. (Tr. 17.) The ALJ found that Plaintiff's (1) fibromyalgia, (2) back condition, (3) neck condition, and (4) obesity, were severe impairments. (*Id*.) The ALJ found that Plaintiff's conditions neither met nor equaled

a listing in the Listing of Impairments. (Tr. 20.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") for a "full range of sedentary work." (Tr. 21.) The ALJ found that Plaintiff could not perform her past work. (Tr. 28.) Relying solely on the Medical-Vocational Guidelines, the ALJ concluded that Plaintiff was not disabled. (Tr. 29.)

In support of remand, Plaintiff first argues that the ALJ's conclusion that her long lasting depression was not a severe impairment is not supported by substantial evidence.  Step Two is the first inquiry an ALJ makes of a claimant's conditions. 20 C.F.R. § 404.1520. If the evidence is not properly analyzed here, it will have effects throughout the remainder of the Decision. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (erroneously eliminating depression at Step Two resulted in a flawed ultimate decision). In the present case, at Step Two, the ALJ concluded that Plaintiff's "longstanding depression" (Tr. 18) was not a severe impairment as it "did not cause more than minimal limitations in the claimant's ability to perform basic mental work activities" (Tr. 17). Plaintiff contends that this assessment is not supported and that remand is necessary for proper determination of Plaintiff's conditions at Step Two, and thereafter.

At the outset, it is critical to note two overarching issues related to the ALJ's Step Two finding. First, the ALJ's Decision states that "[t]he evidence reasonably supports more than a mild limitation" in the "B Criteria" (Tr. 20), while at the same time concluding that the mental conditions were not severe (Tr. 17). Plaintiff argues that this internal inconsistency alone warrants remand for further consideration. Second, the State Agency opinions cannot salvage the ALJ's error as "the Agency provided no rationale or citation for the evidence supporting [their] determination." (Tr. 18.) While the ALJ provided a rationale for the State Agency opinions, this is

12

not permissible. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), teaches that ALJs "must not succumb to the temptation to play doctor and make their own medical findings," a teaching that cases such as *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003), reframe as precluding ALJs from substituting their own opinions to fill gaps in the record.

In any event, as Plaintiff notes, the record demonstrates that Plaintiff's "longstanding depression" would be a severe impairment as it would have more than a minimal limitation on her ability to perform basic mental work activities. 20 C.F.R. § 404.1522(b)(3)-(6). Specifically, Plaintiff's "longstanding depression" would result in a limited ability to engage in sustained, appropriate, and consistent social interactions and deal with usual work situations and routine work settings. There are multiple references showing that Plaintiff's "longstanding depression" makes it difficult for her to leave the house, interact with people, and, to be in almost any type of setting. (Tr. 459 ("She doesn't like to go outside and she doesn't have much motivation"), Tr. 462 ("many mornings she doesn't want to get up from bed"), Tr. 465 ("her anxiety makes her over fearful"), Tr. 468 ("has problems in going into crowds or going out" and wants to just stay home), Tr. 253 ("I have anxiety attacks at the thought of" leaving the house), Tr. 251 ("I leave my house as little as possible"), Tr. 252 ("I have no social activities"), Tr. 260 (she will "very rarely" leave the house and leaving the house makes her uneasy), Tr. 261 (someone has to go with her to appointments because of her anxiety), Tr. 262 (she has no social activities), Tr. 263 ("she has panic[] attacks when leaving the house or even thinking about it).) This evidence shows that Plaintiff's "longstanding depression" would result in a limited ability to (1) engage in sustained, appropriate, and consistent social interactions and (2) deal with usual work situations in a (3) routine work setting. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996);

13

SSR 85-15, 1985 WL 56857, at *4 (1985) ("a person…would have [a] severely limited occupational base if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. A finding of disability would be appropriate.") Accordingly, this court agrees with Plaintiff that the ALJ's determination that Plaintiff's "longstanding depression" "did not cause more than minimal limitations in the claimant's ability to perform basic mental work activities" is not supported by substantial evidence.

However, even assuming, *arguendo*, that Plaintiff's depression did not individually warrant a severity finding, remand is still necessary as the ALJ failed to consider what effect Plaintiff's "longstanding depression" had on her other "severe" impairments (e.g., fibromyalgia, a back condition, a neck condition, and obesity). As explained in SSR 85-28, 1985 WL 56856 (Jan. 1, 1985) although an impairment is not severe, the possibility of several such impairments combining to produce a severe impairment must be considered, and the adjudicator must consider the combination of those impairments. Further, Agency regulations provide that: "[i]f you have two or more concurrent impairments which, when considered in combination, are severe, we must also determine whether the combined effect of your impairments can be expected to continue to be severe for 12 months." 20 C.F.R. § 404.1522. In the present case, the ALJ merely concluded that Plaintiff's depression was not severe, without properly considering whether it might be severe in light of her other severe impairments or her pain. *Berset v. Astrue*, No. 5:11-CV-194-BG ECF, 2012 WL 3578597 * 6 (N.D. Tex. 2012). This is emphasized in the ALJ's continued highlighting of the lack of "documented mental health treatment" and not recognizing how it is related to her pain, for which there was significant treatment. (Tr. 18-20.) Clearly, the

ALJ's analysis is critically flawed in that he did not consider whether and how Plaintiff's depression may relate to her other severe impairments.

This is a particularly grievous error given key evidence of the interrelatedness of Plaintiff's conditions. A large component of Plaintiff's claim is premised on her pain, which inherently affects a person's mental functioning. SSR 03-2p, 2003 WL 2239917 at *5 (Oct. 20, 2003) ("Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times. These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether. When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered."). In Plaintiff's case, multiple providers documented the interrelatedness of Plaintiff's conditions. For example, Plaintiff had multiple physical diagnoses noted on Axis III. (Tr. 392, 459.) The DSM-IV-TR explains that Axis III is used "for reporting current general medical conditions that are potentially relevant to the understanding or management of the individual's mental disorder." *Id*. at 29. Likewise, Plaintiff was diagnosed with "self-reported chronic pain" (Tr. 392) and "severe" (Tr. 466) on Axis IV. The DSM-IV-TR explains that Axis IV is used "for reporting psychosocial and environmental problems that may affect the diagnosis, treatment, and prognosis of mental disorders." *Id.* at 31. Further, as noted in Dr. Kamal's records, Plaintiff's chronic pain syndrome and her pain disorder which had both a psychological and medical component, were diagnosed in conjunction with her depression. (Tr. 459, 466.) Likewise, Dr. Chandrasekhar's treatment records document a connection between Plaintiff's stress (i.e., her mental functioning)

and her pain. (Tr. 389.) Similarly, Dr. Berry opined, after a mental status examination, that Plaintiff's judgment "presented as constrained due to morbid obesity with diagnosis of degenerative disc disease and s/p herniated disc surgeries." (Tr. 392.) Thus, the records in this case document the interrelatedness of Plaintiff's conditions.

Additionally, the ALJ failed to consider the effect that Plaintiff's pain and years of use of very heavy pain medication (Oxycontin, Norco, Morphine, Valium (*see e.g.*, Tr. 347, 353, 659, 664, 671)) may have had on Plaintiff's mental functioning. 20 C.F.R. 404.1529(c)(3)(iv) (Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medication.) Moreover, the Agency itself recognizes that Plaintiff's depression may be related to her obesity. SSR 02-1p, 2002 WL 34686281 at *3. Clearly, the record, along with the Agency's own provisions, document the interrelatedness of Plaintiff's conditions.

Thus, given the facts in this case and the Agency's own regulations, the ALJ erred in not considering the interrelatedness of Plaintiff's depression with her other "severe" impairments. This is also emphasized in well-established Circuit precedent—an ALJ must "consider an applicant's medical problems in combination." *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014); *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015). Here, the ALJ failed to consider what effect Plaintiff's depression might have on her other conditions.

Accordingly, this court holds that the ALJ erred in finding that Plaintiff's "longstanding depression" was not a severe impairment at Step Two. Remand is warranted for this error, as well as for the impact this error had on the remainder of the Decision.

The Commissioner seeks to defend the ALJ's Decision claiming that Plaintiff's mental

impairments were not severe because she did not "consistently seek mental health treatment." As demonstrated in Plaintiff's Brief, Plaintiff's (1) mental illness, (2) dependence on others, (3) social limitations, (4) other diagnosed conditions and symptoms, and (5) finances are all reasonable explanations demonstrated in the record that the ALJ was required to consider before making negative inferences from Plaintiff's compliance and treatment history. The ALJ, however, failed to consider these explanations. This is reversible error.

The Commissioner seeks to minimize some of the explanations; but this, too, is unpersuasive. The Commissioner's attempt to defend the ALJ's Decision with consideration the ALJ himself did not make is impermissible. The Commissioner's attempt to explain away this evidence fails because it is the ALJ's responsibility, not that of the Agency's lawyer, to provide rationale for the findings. It is well established that the Commissioner "may not advance an explanation that the [ALJ] never made himself and may not attempt to support the decision with evidence the [ALJ] apparently did not consider." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (citations omitted); *see Spiva v.Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) ("[I]n defiance of the principle of *SEC v. Chenery Corp.*, 318, U.S. 80, 87-88 (1943), the government's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error."). Thus, the Commissioner's Response fails in its defense.

Likewise, the Commissioner's argument that Plaintiff's mental impairments were not severe is insufficient to defend the entire Decision. First, as noted above, the evidence demonstrates that Plaintiff's mental impairment would result in some limitations. However, even if the evidence did not establish restrictions, this is still an incomplete defense as it fails to

address the combination of all conditions. The Commissioner seeks to defend the Decision saying that Plaintiff was not personally experiencing interrelated conditions. This is unsupported. Plaintiff was clinically diagnosed with conditions on Axis III and Axis IV, which objectively document the interrelatedness of her conditions; and, Dr. Kamal's records documented that Plaintiff's chronic pain syndrome and her pain disorder, had both a psychological and medical component, as they diagnosed in conjunction with her depression. Therefore, the Commissioner's Response is undermined by the objective, medically documented diagnoses and other evidence. Moreover, Plaintiff's other conditions would directly impact her mental impairments as recognized by the Agency's own regulations. Thus, the ALJ erred in not specifically addressed the interrelatedness of Plaintiff's conditions.

Next, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence. The sum total of the ALJ's RFC is that Plaintiff could perform "the full range of sedentary work as defined in 20 CFR 404.1567(a)." (Tr. 21.) Plaintiff argues that this assessment is not supported by the facts or the law and ultimately resulted in a flawed Step Five determination.

First, the description of "sedentary work as defined in 20 C.F.R. § 404.1567(a)" does not constitute an RFC pursuant to Agency requirements. SSR 96-8p, 1996 WL 374184 at *1 (RFC is "the most" Plaintiff can do). 20 C.F.R. § 404.1567(a) defines sedentary as:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id*. "A certain amount of walking and standing" is not a specific finding to ascertain the most Plaintiff can do. Neither is "involves sitting."

Second, the Agency requires a function-by-function analysis. SSR 96-8p, at *1 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in [20 C.F.R. 404.1545(b)-(d)]. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light,….") Here, the ALJ did not "first identify the individual's functional limitations or restrictions and assess []her work-related abilities on a function-by-function basis." Thus, the ALJ did not provide a function-by-function RFC as required by the Agency. Moreover, as 20 C.F.R. § 404.1545(b) outlines, the Agency will consider the physical demands of work activity such as "sitting, standing, walking…pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." But here the ALJ failed to consider these physical work demands as required.

This is particularly critical because in this case there is no accurate and logical bridge from the evidence to the ALJ's "full range of sedentary" finding. For example, the ALJ focuses on normal or absent findings (largely from Dr. Schreier's records), to the exclusion of multiple consistent abnormal findings documented prior to Plaintiff's date last insured. For example, in addition to documenting her obesity (which objectively affects musculoskeletal conditions pursuant to SSR 02-1p), Dr. Orrell noted documented abnormalities on exam. (Tr. 425, 440, 441, 444, 445.) Likewise, Dr. Chandrasekhar's records documented that Plaintiff was "severely depressed" and had "severe tenderness on range of motion." (Tr. 386.) Exam showed positive trigger points and positive straight leg raising tests. (Tr. 385, 386, 388.) Additionally, records from the Center for Pain Relief documented a host of abnormal findings on exam. For example, Plaintiff had multiple positive straight leg raising tests. (Tr. 637, 649, 659.) Plaintiff had positive

Patrick's. (Tr. 530, 540, 571, 586, 611, 617, 620, 629, 637, 649, 654, 659, 664, 669.) Plaintiff had positive torque on lumbar spine testing. (Tr. 540, 571, 581, 586, 596, 611, 617, 620, 637, 644, 654, 659, 664, 669.) Plaintiff had positive sacroiliac joint and lumbar facet tenderness. (Tr. 530, 540, 560, 562, 571, 581, 586, 596, 600, 611, 617, 620, 625, 629, 634, 637, 644, 649, 654, 659, 664, 669.) Plaintiff had positive lumbar facet loading. (Tr. 530, 540, 560, 571, 586, 600, 611, 617, 620, 625, 629, 634, 637, 649, 654, 659, 664, 669.) Additionally, Dr. Johansen documented Plaintiff's abnormal gait and use of a cane. (Tr. 395; Tr. 48-49, 253, 263.) These findings are all critical to Plaintiff's ability to sit, stand, and walk, and were not properly considered by the ALJ. Additionally, there were multiple examinations that noted abnormalities in the cervical spine, which would affect postural and manipulative functions in a work environment. (Tr. 385, 386, 388, 530, 540, 560, 586, 600, 611, 617, 620, 625, 629, 633, 637, 649, 654, 659, 664, 669.)

Likewise, the ALJ's RFC does not properly account for the host of abnormal diagnostic testing. For example, the CT scan of the cervical spine taken in September 2009 showed critical abnormalities, including degeneration, protrusion, and stenosis. (Tr. 688-89). A CT scan of the lumbar spine also taken that day (Tr. 687) and an MRI of the lumbar spine taken on October 6, 2010 (Tr. 686) showed similar abnormalities, including endplate changes and disc protrusion effacing the nerve roots. A follow-up MRI of the lumbar spine in June 2013 showed, disc protrusion, canal narrowing, stenosis, and endplate changes as well. (Tr. 684.) These findings are particularly critical when comparing these findings to the requirements of Listing 1.04, which would have rendered Plaintiff disabled at Step Three without further inquiry. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04. Clearly, the ALJ's RFC for a full range of sedentary work does not properly account for these findings. *Rohan v. Chater*, 98 F.3d at 970.5

In addition to the errors noted above, the ALJ's RFC is silent concerning Plaintiff's mental conditions. Agency regulations explain that mental conditions do not need to be found severe before they trigger the requirement that the limitations of such mental conditions be considered in the RFC. SSR 96-5p, 1996 WL 374183 (July 2, 1996); 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); 20 C.F.R. § 404.1545(a)(2) (when assessing the RFC the non-severe conditions will be considered). However, as noted above, Plaintiff's "longstanding depression" was not accounted for in the RFC.

Likewise, the ALJ's RFC is silent regarding other job functions necessarily present in the sedentary occupation base. The RFC does not address that most sedentary jobs require the ability to stoop, reach, and require good use of both hands and fingers. SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996). However, none of this was considered, and as addressed above, there is evidence of Plaintiff's cervical and lumbar spine conditions, which would undermine the sedentary finding.

A review of the ALJ's Decision shows that the evidence discussed by the ALJ as support for his RFC is largely a summary of only the normal medical evidence in the record. The RFC must be "based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, at *5; see 20 C.F.R. § 404.1545(a)(3). Here, the ALJ rejected virtually all the evidence favorable to Plaintiff. *Whitney v.*

*Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion."). In so doing, the ALJ crafted an unsupported, insufficient RFC, which fails to incorporate all of the relevant medical evidence as herein outlined. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("the ALJ identified pieces of evidence in the record that supported her conclusion … but she ignored related evidence that undermined her conclusion. This … is an impermissible methodology for evaluating the evidence."). Moreover, the ALJ failed to build an accurate and logical bridge between the evidence and the assigned RFC. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("We require that an ALJ build an 'accurate and logical bridge from the evidence to [his] conclusion'")).

The Commissioner asserts that "sedentary work" is an appropriate RFC, if one piecemeals together other rulings not referenced in the ALJ's Decision. However, as noted above, the use of an exertional category, "sedentary work," is only appropriate after there has been a function-by-function assessment. SSR 96-8p clearly states that the ALJ must "first identify the individual's functional limitations or restrictions and assess []her work-related abilities on a function-by-function basis." Id. Only then can the exertional terms be used. *Id*. SSR 96-8p is entirely applicable in this case, and the Commissioner does not suggest or attempt to argue otherwise. Thus, because the ALJ did not provide a function-by-function evaluation and merely concluded "sedentary work," the ALJ's RFC fails as a matter of law.

In addition, the ALJ's RFC fails because it did not properly account for a host of abnormal diagnostic and clinical findings. The Commissioner seeks to distract from this evidence by focusing on the ALJ's discussion about Plaintiff's drug-seeking behavior. As Plaintiff argues this

is a red herring. First, drug seeking behavior is defined as obtaining or seeking prescription

medication "by deceiving or manipulating a medical professional." *Kellems v. Astrue*, 382

Fed.Appx. 512, 515 (7th Cir. 2010). Here, the ALJ cited no evidence to suggest that Plaintiff

obtained or sought medication through deception, fraud, or manipulation. *Tubbs v. Colvin*,

3:14-cv-1963 RLM, 2016 WL 4679716, at *5 (S.D. Ind. Sept. 7, 2016).

For example, one of the references the ALJ cited as support for Plaintiff's "drug seeking

behavior" was when Dr. Schreier stated that he would not increase Plaintiff's narcotics. (See Tr.

22, citing Tr. 362.) This same report, however, notes that Plaintiff was offered a referral to

another place that would continue her treatment and prescriptions, but she declined and continued

treatment with Dr. Schreier. This does not show that Plaintiff was "deceiving or manipulating a

medical professional." Another reference the ALJ used as evidence of Plaintiff's "drug seeking

behavior" was Dr. Chandrasekhar's report. (Tr. 22, citing 3F.) However, this report merely shows

that Plaintiff was "not getting enough pain relief" and that Dr. Chandrasekhar would make an

appointment for her with another pain clinic. (Tr. 385.) This does not show that Plaintiff was

"deceiving or manipulating a medical professional." In another reference, the ALJ cited to Dr.

Berry's consultative examination (Tr. 22, citing 4F), noting Plaintiff's self-report that she abused

her prescription pain medication because nothing really helped (Tr. 390). Again, this does not

show that Plaintiff was "deceiving or manipulating a medical professional." Likewise, the ALJ

stresses that Plaintiff was discharged from pain management as evidence of her drug-seeking

behavior (Tr. 22, citing Ex. 10F at 9-10), but her discharge was for "not [having] enough"

hydrocodone in her drug screen; it was not for excessive use. (Tr. 422.) This does not show that

Plaintiff was "deceiving or manipulating a medical professional." Similarly, the ALJ references

another discharge from a clinic (Tr. 22, citing 10F at p. 12), but this was for missing appointments (Tr. 425). This does not show that Plaintiff was "deceiving or manipulating a medical professional." The rest of the ALJ's purported evidence consists of citing to large exhibits, without any reference to specific findings or conclusion. Thus, the ALJ failed to support his assessment that Plaintiff obtained or sought medication through deception, fraud, or manipulation.

The Commissioner asserts that the RFC is supported because the ALJ concluded that the evidence did not demonstrate the need for an assistive device. (Def. Br. at 13-14.) However, it is critical to note that a cane or other assistive device does not need to be required everyday in order for it to be included in the RFC. Occasional use of a cane triggers inclusion in the RFC. *See, e.g.*, *Grube v. Colvin*, No. 1:14-cv-01294-DKL-RLY, 2015 WL 5672645, at *6 (S.D. Ind. Sept. 24, 2015) (remanding case where the ALJ erred in considering the use of a cane and explaining that while the claimant "might not need the cane on good days, she may need it on bad days").

In sum, the ALJ's Decision is erroneous because the ALJ focused on normal or absent findings (largely from Dr. Schreier's records), to the exclusion of multiple consistent abnormal findings documented prior to Plaintiff's date last insured. The ALJ's focus on unremarkable clinical findings (Tr. 24-27) is insufficient in light of the multitude of abnormal findings in the record. Moreover, the ALJ's RFC is insufficient as it silent as to Plaintiff's mental conditions and to other job function necessarily present in the sedentary occupation base. Plaintiff demonstrated that her conditions would affect her ability to perform mental-work related tasks and physical tasks such as stooping, reaching, and requiring good use of both hands and fingers. However, none of this was addressed in the RFC and none of this can be gleamed from the broad term

"sedentary."

For the foregoing reasons, the ALJ's RFC does not comport with Agency regulations and regulations and applicable precedent. Thus, remand is necessary.

Next, Plaintiff argues that the ALJ erred in categorically dismissing Plaintiff's award of disability benefits through the Veterans Administration. The VA benefits Plaintiff received were connected to her inability to work at the VA. (Tr. 45.) She had worked as a pharmacist but was "forced to leave due to absences because of medical issues." (Tr. 45, 70.) She was making mistakes and having a hard time concentrating. (Tr. 45.) Because of her conditions, she was granted VA disability benefits.

VA determinations are not dispositive findings for Social Security purposes. However, they are nevertheless evidence that needs to be properly considered. The Seventh Circuit has held that VA disability findings "should" be given "some weight" in determining a claimant's disability for Social Security benefits. *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006). The Seventh Circuit noted that a finding by the VA that someone is unemployable "is practically indistinguishable from the SSA's disability determination, which asks whether a medically determinable impairment prevents the claimant from engaging in past relevant work or any substantial gainful work that exists in the national economy." *Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017) (citing 42 U.S.C. § 423(d)(1)(A), 20 C.F.R. § 404.1505), *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015)).

In the present case, the ALJ did not take issue with Plaintiff's VA disability benefits award. Rather, the ALJ categorically dismissed Plaintiff's VA disability benefits award by merely concluding that it is not dispositive for Social Security purposes. This is an incomplete analysis.

First, although neither binding nor conclusive, the VA's disability finding is evidence in favor of Plaintiff's disability and must be properly reviewed and weighed by the ALJ. Second, as the Seventh Circuit noted in *Bird*, the VA's conclusion is practically indistinguishable from a Social Security disability finding. *Id*., 847 F.3d at 913. Thus, in not considering the practical effect of Plaintiff's VA disability benefits award, the ALJ failed to create an accurate and logical bridge, which the Seventh Circuit deems necessary to uphold an ALJ's Decisions. Third, this evidence entirely supports Plaintiff's allegations and thus should have been factored into the ALJ's assessment of Plaintiff's credibility. *See* SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017) ("we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate…symptoms…")

The Commissioner asserts that the ALJ correctly dismissed the VA award because the ALJ did not have the underlying ground for the VA "decision, nor any explanation of the standards, guidelines, or process the agency used to make its determination." This was not the ALJ's analysis. Rather, the ALJ merely said the VA conclusion was not a dispositive finding. (Tr. 28.) Contrary to the Commissioner's characterization, that is the sum total of the ALJ's analysis with regards to Plaintiff's VA disability benefits. Clearly, this falls short of the required analysis under Agency regulations and rulings. *See also, Derry v. Berryhill*, — Fed.Appx. —, 2019 WL 102477, at *5 (7th Cir. Jan. 4, 2019).

Most critically, and not contested by the Commissioner, this evidence entirely supports Plaintiff's allegations. This is fully favorable evidence that is entirely relevant to her claim for disability and her statements. Thus, rejecting this evidence as being "not dispositive" is insufficient. It should have been factored into the ALJ's RFC assessment and the ALJ's

credibility assessment. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017) ("we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate… symptoms…"). For the foregoing reasons, the ALJ erred in categorically dismissing Plaintiff's disability award and remand is necessary.

Next, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility. A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Here, the ALJ determined that Plaintiff was not credible because the medical records did not fully support her allegations. (Tr. 23.)

Plaintiff argues that, while the ALJ did review some of the medical evidence, this cannot serve as a basis for dismissing Plaintiff's statements because the ALJ fundamentally misunderstood Plaintiff's conditions such that this error further manifested itself in a flawed "credibility determination." Plaintiff further argues that the ALJ's use of selective objective evidence to suggest that Plaintiff's symptoms are uncorroborated, is itself unsupported. *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (the ALJ erroneously believed that "complaints of pain, to be credible, must be confirmed by diagnostic tests."). Also, Plaintiff argues that pain—a large component of Plaintiff's claim—is not measured on objective testing. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("Pain is always subjective.").

The ALJ found that Plaintiff's gaps in treatment undermined her allegations. (*See e.g.*, Tr. 19 ("documented gap in mental health treatment"), Tr. 19 (the claimant not needing ongoing mental health treatment"), Tr. 20 ("gaps in need of mental health treatment").) However, an ALJ may not "draw inferences about an individual's symptoms and their functional effects from a

failure to seek treatment without first considering any explanations that the individual may provide." SSR 96-7p, 1996 WL 374186, at * 7 (July 2, 1996). Although SSR 96-7p was rescinded by SSR 16-3p in March 2016, the Agency still maintained that there are many possible reasons an individual may not have pursued treatment, and that the ALJ "will" consider and address a claimant's reasons for not pursuing treatment. SSR 16-3p, 2017 WL 5180304, at *9-10. In the present case, the ALJ did not consider any explanations relevant to this determination; thus, remand is warranted. *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (collecting cases).

For example, the ALJ did not consider that Plaintiff might have issues with treatment due in part to her mental illness. *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). In fact, psychological testing showed that Plaintiff's insight and judgment were merely "fair." (Tr. 466.) Dr. Berry opined that Plaintiff's judgment "presented as constrained due to morbid obesity with diagnosis of degenerative disc disease and s/p herniated disc surgeries." (Tr. 392.)

Also, the record documents that Plaintiff requires assistance from others with respect to her treatment and sessions. Ms. Harris, Plaintiff's daughter, reported that "I usually take her [to the doctor]. She has anxiety if I go, but it is still very difficult." (Tr. 261.) This is direct evidence of Plaintiff's inability to independently manage her care and attend appropriate treatment independently. *Hill v. Astrue*, No. 1:08-cv-0740-DFH-JMS, 2009 WL 426048, at *9 n. 5 (S.D. Ind. Feb. 20, 2009) (noting that "[m]any individuals with mental health problems are hesitant to seek mental health treatment for legitimate reasons."). The ALJ's failure to consider this before

dismissing Plaintiff's statements and conditions is reversible error. Third, as extensively detailed above, Plaintiff has a significant social limitation that would necessarily affect her ability to attend treatment outside the house.

Additionally, Plaintiff had other conditions (*e.g.*, Axis III and Axis IV) which objectively affect the diagnosis, treatment, and prognosis of her mental disorders. Plaintiff also reported not having enough income and difficulty paying the bills. (*See e.g.*, Tr. 458 ("she doesn't have any money"), Tr. 460 ("Bill collection agencies call her and she dreads their phone calls or even opening bills. I told her to seek help with a financial counselor"), Tr. 461 ("financial problems"), Tr. 251 (not having money causes her "a lot of anxiety"), Tr. 261 ("income has greatly decreased due to her inability to work. This causes her anxiety.").) Plaintiff has not worked since 2008 (Tr. 17), and would necessarily struggle to afford housing, food, clothing, and medical treatment, which in turn can affect mental impairments. Despite being required to do so under Agency regulations, the ALJ never considered any of the reasons outlined above that might explain why Plaintiff may not have had proper mental treatment and, thus, erred in dismissing and minimizing Plaintiff's allegations. *Gonzalez v. Commissioner of Soc. Sec.*, Case No. 3:17-cv-384- PPSMGG, 2018 WL 4627214, at *2 (N.D. Ind. Sept. 27, 2018) ("a more demanding inquiry is required" when assessing mental impairments and purported lack of treatment).

Additionally, the ALJ did not consider a host of other evidence that would bolster Plaintiff's credibility. For example, the ALJ did not consider any of the evidence presented in Plaintiff's daughter's reports. Given the critical nature of Ms. Harris's reports and her first-hand observations, the ALJ committed reversible error by failing to consider and weigh this evidence. SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006) ("we will consider all of the available

evidence in the individual's case record. This includes… statements by the individual and others about the impairment(s) and how it affects the individual's functioning"); *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("The [ALJ] should have made clear whether he believed the fiancee's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief."). Plaintiff's daughter is a relative. The regulations include "relatives" as "other sources" who may provide evidence. See 20 C.F.R. § 404.1513(d)(4). However, this is an entire line of evidence which supports Plaintiff's claim, which was not considered by the ALJ. *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("testimony from lay witnesses who see the claimant every day is of particular value[;] such lay witnesses will often be family members.") (citation omitted). And although the ALJ considered Ms. Renee King's third-party assessment (Tr. 28), he nevertheless did so improperly, for the same reasons as noted above. Thus, remand is necessary for the ALJ to consider these statements and their impact.

Moreover, other objective evidence not considered by the ALJ should have bolstered Plaintiff's credibility. Plaintiff's obesity, an objective medical condition which may bolster her credibility, was not consider in the credibility context. *Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009) (remanding for the ALJ's failure to consider the claimant's obesity in the credibility analysis). Critically, Dr. Orrell opined, on two separate occasions, that Plaintiff was disabled. (Tr. 427, 1039.) These medical opinions serve to bolster Plaintiff's claim for benefits and should have been considered in that context. Rather, the ALJ merely rejected the evidence without properly applying the factors required, which weigh in favor of Dr. Orrell's opinions. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) ("even if there were sound reasons for refusing to give Dr. Callaghan's opinions controlling weight, the ALJ still erred by assigning his

opinions little weight without considering relevant regulatory factors under 20 C.F.R. § 404.1527(c).") Dr. Orrell is (1) an examining physician, who (2) treated the Plaintiff for eight years, and (3) provided two consistent opinions, (4) along with his medical records, in his medical capacity. This should have been factored in assessing Plaintiff's credibility. 20 C.F.R. § 404.1527(c)(1)-(6).

Finally, Plaintiff has an extensive work history, with substantial earnings between 2001 and 2008 (Tr. 200-01), which ended due to her condition. As the Seventh Circuit has noted, a claimant with a good work record is entitled to a finding of substantial credibility when claiming an inability to work because of a disability. *Cole v. Colvin*, 831 F.3d 411, 415; *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). This should have factored into the ALJ's credibility.

Contrary to the Commissioner's suggestion, the medical evidence the ALJ reviewed is not a proper basis for discrediting the Plaintiff. The Commissioner's focus on the ALJ's consideration of objective medical evidence is misplaced. While the ALJ did review some of the medical evidence, the objective findings cannot serve as a basis for dismissing Plaintiff's statements because the ALJ fundamentally misunderstood Plaintiff's conditions such that this error further manifested itself in a flawed credibility determination. Thus, even the evidence that the ALJ did consider cannot serve as substantial evidence for his credibility determination.

The ALJ erred in rejecting Plaintiff's statements and remand is necessary to address these errors and to reevaluate Plaintiff's claim in light of a proper credibility determination. *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

Finally, Plaintiff argues that the ALJ's ultimate decision is not supported by substantial evidence. The burden of proof at Step Five lies with the Agency. 20 C.F.R. § 404.1560(c)(2);

*Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). However, given the ALJ's errors

throughout the Decision, there is no substantial support for the ALJ's ultimate decision that

Plaintiff was not disabled via Medical-Vocational Rule 201.28 and Rule 201.21. The grids cannot

direct non-disability findings when there are non-exertional limitations, as would be required

here. *Herron v. Shalala*, 19 F.3d, 329, 336-37 (7th Cir. 1994). The ALJ failed to meet the

Agency's burden at Step Five and remand is necessary to address the ALJ's errors.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further

proceedings consistent with this Opinion .

Entered: March 4, 2019.

s/ William C.  Lee
William C. Lee, Judge
United States District Court